Our next case will be number 24-11642 CASA Express Corp v. Bolivarian Republic of Venezuela. This case is number 24-11642 CASA Express Corp v. Bolivarian Republic of Venezuela. This case is number 24-11642 CASA Express Corp v. Bolivarian Republic of Venezuela. May it please the court, Jeffrey Molinaro on behalf of the appellant in this case CASA Express. As the court is aware, there are numerous issues in the briefing and in my limited time here today, I'd like to focus the court's attention to the concepts of does the court have ancillary jurisdiction to hear this case? I'd like to start there too. Me too. Perfect. Assume for the moment we don't have ancillary jurisdiction. Just assume with me for the moment. Okay. Okay. We'll get back to it, but I want to assume that. I don't read your brief to argue any other independent basis of jurisdiction. I don't believe any other basis was pled, Your Honor. Okay. So I think we're boxed into ancillary. Right. So you agree that that would rise and fall on ancillary jurisdiction? I believe so. That's why we didn't argue another basis. Okay. And I appreciate that. That's why I started with the question of assuming because I want to get everything else out of the way. All right. With regard to ancillary jurisdiction, as I understand the Supreme Court's decision here, the one that y'all argue over Peacock, what the Supreme Court has said is, yes, we have ancillary jurisdiction for supplemental proceedings that derive from the cause of action itself and from the party that's before us. So in other words, if we're going to garnish the wages or attach a bank account for the party that's before us, yes, that's ancillary and we do that. If we're going to garnish anything, even if it fraudulently conveyed, if that party fraudulently conveyed something during the litigation to try to avoid or just before it knew it was going to be sued, that's the party there that's related to the lawsuit and that party's property and we're going to bring it back in. This seems to be, as I understand it, a separate theory or a new theory of liability here, constructive trust, from what was then the underlying suit. And you're bringing in not the bank of the defendant before, but six entities that have nothing to do with the underlying bond litigation, three other defendants that have nothing to do with the underlying bond litigation, and then the defendant itself. How is that not new theories of liability against different parties with different principles and different kinds of relief that the Supreme Court was talking about in Peacock? I think when we look at the interpretation of Peacock as developed by the circuit courts, Peacock doesn't turn on the cause of action being, is it a fraudulent transfer? It turns on, are the assets which you are going after of the third party legitimately held assets of the third party? Is it, are you trying to impose personal liability on the third party? I, you know, I guide the court, and we cited this in our brief, it is a district court case out of Delaware, but it is Crystal X International Corporation versus Venezuela. And with some of the language is relevant here, it says the issue here is whether Pelley's assets are in effect Venezuelan assets. If they are, then the case is correctly characterized as one in which the judgment creditor is attaching a third party is not one correctly characterized in which the judgment creditor is attaching a third party. Here is what the Supreme Court said in Peacock. To impose an obligation to pay, ancillary jurisdiction does not extend, quote, to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment, that seems to be what we have here, and it is not applicable, quote, where the relief sought is of a different kind or on a different principle than that of the prior decree. And here, constructive trust would seem to be of a different kind and a different principle than the judgment that was done under the prior decree. And the court then went on to say that ancillary jurisdiction does not extend, quote, to those to proceedings, quote, founded upon entirely new theories of liability. I'm just struggling to see how this is not a step too far from a fraudulent conveyance action, the one that in the National Marine Services case we said was okay under Peacock. Well, in, I think, National Marine or Maritime Services, similar to Gambone that we cite and Crystal X, focuses on the assets themselves that are being held by the third party. Now, we're not asking for liability against Mr. Gorin or any of the defendants that's above and beyond the assets that we have pled to be illegitimately held. So it's limited. But it's different. It's a new theory of liability against them, property that they currently hold, that's completely different from the underlying bond litigation. In other words, it's one thing to say, we got a judgment in underlying bond litigation and during the course of that litigation, the defendant, you know, got rid of his house for a low price to a relative in order to be able to, you know, sort of keep that asset in the family. And so we're going to go after that asset with regard to the judgment that's there. That flows directly from that which is there. Here, you're trying to hold completely new parties that had nothing to do with the underlying litigation responsible under a completely different theory of constructive trust from anything that was litigated below, right? Am I describing anything incorrectly? No, I don't believe you are. I just want to make sure that we're factually and we're on the same page. I'm in agreement that the theory of trustee ex-maleficio and constructive trust are different theories. However, so is fraudulent transfer action. There are elements that have to be proven in fraudulent transfer. They're not related to the underlying tort or breach of contract. They're related to a separate action. And the reason that the court has allowed those cases to proceed is because the assets, the underlying assets, are being treated as the judgment debtor's assets. It's one and the same. The equitable construct in our position is the equitable construct, the equivalent of a fraudulent transfer in action and equity would be for constructive trust. You've obtained these through your actions. You have obtained assets that are not legitimately yours, that are legitimately the actions of the judgment creditor, the assets of the judgment creditor. There's been no determination of any court that that occurred. There's no judgment by Venezuela, whoever, against Mr. Gorin or his corporations. There's no judgment. You jump to the assets, but there's no judgment against him for anything. Right? Just stop right there. Yes, Your Honor. The theory of liability that they were crooks and they stole from Venezuela in their public official capacity, there's no judgment on that, right? No. Never been determined. And that would have to be determined in this case. You would agree with that before you could get the assets. Do you at least agree there would have to be some showing of that in this case? Here, for Mr. Gorin, what we would have to show, and I think this goes to Connexity, what we would have to show is he participated in the breach of trust that has already been found in the default judgment of the Venezuelan treasurers, so he's inequitably obtained these assets that are misappropriated from Venezuela.  Yeah. But that wasn't reduced to a judgment. No, but there's not a reducement. Venezuela, about something, you'd have to get a judgment in the United States against him to get his assets, correct, normally. In a non-supplemental proceeding, you would, but it's the same thing with a fraudulent transfer action. If there wasn't a fraud, but for a fraudulent transfer case. No, but that's not the same thing. Are you talking about the 11th Circuit case Straub? There, it was a company. It was a pure fraudulent transfer. The company had assets. The president of the company, once they got a judgment against it, the president of the That's all that happened there, was total connectivity in that fraudulent transfer, right? Well, a fraudulent transfer would be, but I'd still have to prove that fraudulent transfer. That was a pure fraudulent transfer. He owned the company. There was a big judgment against the company, so what did he do? He just took the money and put it in his name, so all against him was the fraudulent transfer. The underlying liability was purely established. There's no underlying liability determined here. Well, there's underlying liability. Do you understand the jump you're trying to make? And the underlying liability has nothing to do with the bond case. The underlying, well, the underlying liability is Venezuela's, and the way to collect the judgment is through the supplemental proceeding. The difference is that, as you said, the construct of a fraudulent transfer is, it is that person's asset for which a judgment is there that they have transferred to someone else, and so all you're doing is getting it back. Here, there's no indication that Venezuela has sent anything over. In fact, the allegations are exactly the opposite, that someone took money from them unjustly and unjustly enriched themselves and did so by laundering it through a bank in Dominican Republic to the United States to buy properties in Miami. And I think what Judge Hall is asking, and I have the same question, is that seems to require an extra step, not just that there was a judgment against the defendant before a court for which their assets have been transferred and we're getting that asset back, but a determination that these folks, the people that have been supplementary pled in, in fact, did something unjustly, and that has never been judicially determined in the underlying proceeding. I think that's what Judge Hall is asking, and I have the same question. Is that right? Well, there have been, in this proceeding, there have been defaults against Venezuela. There have been defaults against the Venezuelan. Right, but not as to Mr. Gorin or the six... Not as to Mr. Gorin. That is correct. Now, I think the question ultimately becomes as though the assets to which we're seeking, a fraudulent transfer, the purposes of a fraudulent transfer, and I want to take a step back, go fraudulent transfer, and then go forward. Would a fraudulent transfer... Can we answer my question, and I think Judge Hall's also is, you agree there's been no judicial determination that these folks unjustly took, not that Venezuela sent property to them, because that would be a traditional fraudulent transfer, but that these folks unjustly took Venezuelan money, laundered it through the Bank of the Dominican Republic, and bought properties here in Miami. Other than the criminal indictments and the criminal convictions, no, you're right. And isn't, I guess, what Judge Hall's asking, and I think the question is a good one, is doesn't that take this in a different kind where Peacock's distinguishing between sort of a straight fraudulent transfer, which we all agree is within the ancillary jurisdiction of the underlying court, and something different in kind, whether it's a new theory of liability or a different theory or remedy? I don't believe so, because it goes to the concept of a supplemental proceeding, and the idea that... There's no doubt you can get a supplemental proceeding. I don't think there's any question under Florida law, at least I don't have a question of it, that you can bring it. The only question is, what's the jurisdiction of the federal court? You could have gone into Florida court, domesticated it there, and we wouldn't be having this discussion. Well, again, I think it goes to the concept of the assets. We're not seeking personal liability overall. The assets we're seeking, the only assets, the only liability they are facing are assets that we have pled on the front end, belong to Venezuela, that we have to prove that the assets belong to Venezuela, which is part of the process, would be no different than in a fraudulent transfer. I'd have to prove that the assets were fraudulently transferred and they belong to the company. Here, I have to prove that the assets belong to Venezuela, and they were absconded or stolen by Mr. Gorin, and through the Venezuelan bribery. The difference it seems to me is that the underlying court has an interest in making sure that its judgment is effectuated, and that it's not evaded by that party in front of it, with which it already has jurisdiction, sending assets away, versus Venezuela, who appears to have done nothing wrong here, in this context, and has all these other folks who have stolen from the treasury of Venezuela, apparently, and having to prove that separate thing. And that separate thing seems to distinguish it from the original action. Isn't that the issue? Well, I think that goes to the elements that we have to prove, to prove that the assets are Venezuelan. And that's why I think it is similar, and it reaches common statute commonly with the maritime services case, Your Honor. Thank you very much. Good morning, and may it please the Court. Your Honor, I would like to begin by acknowledging that this case was dismissed below for six reasons. And to win this appeal, CASA must convince this Court that all six reasons were wrong. The failure to properly plead a constructive trust, the act of state doctrine, no standing, foreign sovereign immunity, no ancillary jurisdiction, and CASA failed to even properly serve Gorin with process or establish personal jurisdiction over Gorin. This appeal really begins with the sole remedy being sought by CASA, which is a constructive trust. Having sought a constructive trust as its only remedy, and having repeatedly stated that to the District Court, it was incumbent upon CASA to properly plead traceability, which is the fundamental element of a constructive trust. Counsel, why don't we start with the jurisdictional basis. So let's get past ancillary jurisdiction. We talked about that a lot with your opposing counsel. So let's assume that there is ancillary jurisdiction. Standing still has Article III implications. And then personal jurisdiction deals with a separate aspect of the Court's jurisdiction before we get to whether they stated a sufficient claim for a constructive trust or not. So can you address why the District Court got those right? Sure. And I'll address standing first. And, of course, it was undisputed before the District Court that CASA itself lacked Article III constitutional or prudential standing to assert any claims against Gorin and the  So CASA instead sought a court-ordered assignment compelling Venezuela to surrender its chosen action to CASA. But isn't the question, well, first of all, they seem to have gotten court permission to be able to do that, but doesn't a judgment creditor stand in the shoes of the judgment debtor for purposes of execution? So in other words, let's assume this property, the properties were a really easy case. There's six properties in Coral Gables that are owned by the state of Venezuela. It would be, we agree that the judgment creditor could come to Florida, domesticate the judgment, and assuming ancillary jurisdiction for the moment, and they would have standing to seek those properties. Would he not? Assuming, yes, ancillary jurisdiction, and it's just properties that directly belong to Venezuela, then yes, but that's not the case here. I agree. But for standing purposes, I think that might affect some other stuff. But for standing purposes, why is that not sufficient to allege an Article III injury? I'm a judgment debtor. I'm owed money on the judgment. They have assets that I'm saying belong to the judgment debtor. I am seeking to use process in order to be able to constructively put a trust in those assets so I can profit from them and ultimately sell them. I don't understand why that's not an injury that's traceable and redressable by the courts. I think in that case, there would be Article III standing because the original injury that was suffered by the judgment creditor would still sort of apply to the efforts to just basically collect on its judgment. So why would this case be different? The assets aren't held by Venezuela directly, but are instead held by someone that stole money from it or has its money. Well, this case is different because CASA has no injury with respect to the cause of action that it's alleging here. They're saying that Venezuela is owed this money, and I'm its judgment creditor, and I want that money. So I gave you the original hypothetical about the properties in Coral Gables. Let's do a bit of a different one. So let's say Venezuela has a million dollars in a bank that's a Miami bank, and they want to domesticate the judgment and want to seek to get the funds in the bank. The bank is the one that has to be impleted in because the bank is the one holding the money on behalf of somebody else. Would there not be standing for that purpose? For that purpose, perhaps, but here, Venezuela does not own the properties. I know, and I understand that, and it theoretically doesn't hold the money in the bank either. But here, what the allegations are, and for standing, we have to take them as true. That's why standing is different than failure to state a claim. But for standing, we accept the allegations as true. Those allegations seem to suggest that these properties were purchased unlawfully by stolen Venezuelan money, and so actually belong to the state of Venezuela. That's the theory of it. Whether that's true or not or whether they state the claim, I think, is separate. But for standing purposes, why is that not very similar to the bank account or to Venezuela directly owning the properties? Because there's an underlying cause of action that needs to be proven in order to even get to that point. Standing doesn't ask that question. Standing says, assuming you win on your cause of action, do you have an injury? That's what standing asks. Standing focuses on the injury. Right. But assuming merits, assuming you succeed on the merits, have they stated an injury? And so that's why I think it's a little different than the failure to state a claim, which is why I know you want to start there, because you may end up winning on that. But for standing purposes, we have to assume they have established a constructive trust. Assuming that, doesn't that mean that they have an interest that there's something Venezuela owns in Miami for which they are seeking to get an interest in? If the appellant has already established a constructive trust, and the properties belong to Venezuela. Venezuela has some beneficial interest in the property, right? Then if the appellant is merely trying to collect on those properties that have already been proven to belong to Venezuela, then perhaps, yes, they would have standing. But that's obviously not the case here. And so the reason, and because that's not the case, the only way that the appellant is seeking to have standing is by basically standing in the shoes of Venezuela to first prosecute a cause of action. Yes, but that isn't an assignable, doesn't Venezuela have an assignable chosen action against the defendants? Venezuela has an assignable chosen action, a claim, against them, right? No. Venezuela does not. I'm not talking about CASA, I'm talking about Venezuela has a cause of action against these defendants and it's assignable. I'm not saying they assigned it, I'm saying they do have an assignable cause of action and I think that's what they're trying to assert here. Venezuela has never asserted a cause of action. That's not my question. I'm talking about do they have a cause of action, but does Venezuela have a cause of action against these defendants? If the events happened and if it were proven, it could potentially have a cause of action against the defendants. And it would be assignable to a third party? It would not be assignable under Florida law under the supplemental framework that the appellant is using here. That's a different question, whether you could prosecute it, but anyway, you've answered my question. I think that's where the standing comes from, but that's just me. Can we talk about personal jurisdiction? Tell me why the district court got it right on the personal jurisdiction issue. So with respect to personal jurisdiction, the CASA alleged specific jurisdiction over Gorin, not general jurisdiction. Let's go with business venture. That's, I think, the easiest of them. Correct. So the district court got it right because with respect to the business venture prong, the only thing that CASA was alleging that Gorin did was post some properties up for rent, et cetera. So the district court held, well, that's not enough to constitute a business venture because under the cases that even CASA was relying on, it was a property owner basically renting a property for 20 years and then selling it, whereas... Here's what... Quote, both the renting of the property and the sale of such an investment property sufficiently describes a business venture. And quote, engaging in a single act for profit can amount to a business venture. So yes, you're right, the underlying facts were a longstanding relationship and that clearly shows much more of a business than a single act, but the court seems to be saying is that a single act is sufficient, right? I think that the court seems to be saying that in that one line, but the facts of the case don't really support that and the cases show that a business venture has to be a general course of business activity for pecuniary benefit. But even if we get past that, Your Honor, we get to the connexity prong. And we're dealing here with specific jurisdiction, not general. Specific jurisdiction has to be linked to the underlying cause of action. So there has to be a connexity between the business venture and the cause of action that the appellant has alleged, which is a Venezuelan currency exchange. Okay, so this gets to the ancillary jurisdiction issue. I don't think you can have it both ways. In other words, I don't think you can argue to us this is a separate lawsuit for which there is no ancillary jurisdiction and then say, for personal jurisdiction, we look to the underlying lawsuit. In other words, it's either one or the other. These are either separate cases, in which case the arising underprong for personal jurisdiction has to look at not the original case, but the second case. Or they're all one case together. This is ancillary of the original bond action. And then I think you might be right on the personal jurisdiction side. But you can't be right on both. Well, with respect to personal jurisdiction, I'm not even referring to the underlying bond  You did the bond. I think that's exactly what you did. I don't have I don't have a rewind function, but I'm almost certain that's what you just said. Well, I meant the Venezuelan currency exchange scheme. That is the allegation of this action.  But the allegations are that I am owed a constructive trust on the property. So how is a business venture with regard to that very property for which I am owed a constructive trust based on unjust enrichment, not a rise out of that very act? That does seem to be connected. And that's why it all goes back to really whether there is a constructive trust. And that's why the merit, the first argument about traceability really kind of affects all the other arguments, because the connexity is traceable. Well, connexity deals with whether you can show that the assets are there. But we're talking about something else. We're talking about does the cause of action arise from the connection to Florida for personal jurisdiction purposes? And the cause of action arises from a constructive trust. And the connection is the business venture. So why is renting out and putting for sale those properties for which we are seeking a constructive trust not a rise from that act? They seem to be very connected. Well, you only get a constructive trust if the properties were purchased with funds from the tortious conduct. Oh, I know that. But again, in jurisdiction, we're not litigating the merits of the whole thing. We're just looking at whether the allegations arise out of the cause of action that's alleged arises from the specific provision of the Florida Longarm Statute. And here, the business venture would seem to arise out of the constructive trust. Would it not? If the properties belong to Venezuela and the constructive trust were properly alleged, which it wasn't. Right. I know you're not conceding that. And the properties were used for a business venture, then there would appear to be a connexity. But the lack of a connexity is there was no allegation that the underlying Venezuelan currency exchange scheme, the misappropriated funds from that scheme, were even used to purchase these properties. And so we don't have, there was a conclusory allegation, but there were no facts as to how the properties were paid for, what money was used to pay for them, much less that Gorin paid for them with money derived from the currency exchange scheme. So there's a lack of connection there. And that's why there's also a lack of connection with respect to jurisdiction, personal jurisdiction, because there's not even an alleged, a true alleged constructive trust in the first place to then say that the properties already belong to Venezuela and therefore there's a connexity for jurisdiction purposes. Can we go back to ancillary jurisdiction just because, wait, I want to make sure, other than Peacock, which helps you, and Straub, which they cite, but I don't think it helps them because it's so distinguishable, what other ancillary jurisdiction cases would you want us to focus on besides Peacock? Or you just rely mainly on Peacock? I think, I believe we relied mainly on Peacock with respect to ancillary jurisdiction and obviously the appellant relied on Straub, which is distinguishable. And so what other cases besides those two should we take into account? I don't recall any other. I just want to make sure, on your side, there was nothing else. I don't recall any other that we relied upon just because Peacock was so on point with respect to ancillary jurisdiction that it was, it was a... Peacock was 1996, so I thought there might be something after that. Well, Your Honor... Your Honor, you answered my question. You don't need to get into those cases. We understand them, what they said. They're pretty clear, short and clear. I'd like to touch briefly on the act of state doctrine, which basically, which says that acts, official acts taken by a foreign sovereign with, by government officials here in Venezuela by the national treasurers are to be deemed valid. They argue, and I think there's some merit to it, that they're not really attacking the awarding of contracts for the, the, is it Casa de Bolero? Is that, is that what they, they're alleging? An exchange house? Yeah. Right. That they're not really attacking that. What they're attacking is Gorin's use of bribes in order to get these things to then profit from it, to buy these properties. And, and we in the Florida and the U.S. Supreme Court seems to have distinguished between those two things, between an act of bribery separate from the underlying act itself. What do you say to that? But they are attacking it. They do attack it 13 times throughout the motion to commence, calling it illicit and corrupt, calling these contracts illicit and corrupt. But regardless, the ultimate remedy that Casa seeks is a constructive trust. It's the right of reclamation. And here, basically Casa is trying to take back the funds that were given by Venezuela to Gorin via these contracts. There's no way to reclaim those funds back unless the contract itself is rescinded in the first place. This is not like- Why is that? Why, why is, why is that not, why can't I, if I obtained a contract through illicit proceeds, why can't I get the contract from, why can't I get the proceeds from that contract that I got through illicit proceeds without attacking the underlying contract itself? Because a constructive trust theory is, one of the elements is unjust enrichment. So you'd be saying that Gorin, according to Casa, has been unjustly enriched via these contracts and so Gorin should basically give back the funds that were given to him via the contracts. And there's nothing for Gorin to give back unless the contract is first invalidated, unless the whole transaction is undone. And so that's what the act of state doctrine says the court cannot do. Indeed, under the act of state doctrine, the court already has to assume that those contracts are valid, completely valid. And if those contracts are valid, then there's no unjust enrichment on the part of Gorin. There was a valid transaction and there's no constructive trust to be imposed on anything because there's nothing to reclaim back on behalf of Venezuela. There's case law that says if you have an unjust, if you have a valid contract, then you can't also have an unjust enrichment claim, period. And so that case law applies. And I see that my time is up, Your Honor. So I would ask that the lower court be affirmed. Thank you, counsel. Roboto. Your Honor, picking up where... Can we go back to the last thing your opposing counsel just said in ancillary jurisdiction? If we find no ancillary jurisdiction here and no, you agree that nothing else has been pled independent for a jurisdictional basis, do you agree that we would vacate the district court's judgment below and order it to dismiss without prejudice the supplementary proceeding? If it had no jurisdiction, then it couldn't have entered the order and rule on the merits, yeah. So it vacated and order it to dismiss without prejudice. Without prejudice to plead a proper case. I think part of the issue, jumping in where we left off with active state, you know, the court, I think the court made a valid point, Judge Luck. We're allowed to impute to foreign officials unlawful motivation. What we cited in our... I will say, though, your opposing counsel makes a very good point. I've read the motion to commence, I think it's the amended motion to commence supplementary proceedings a number of times. And she's right that throughout, it does say that the contract or these Casa de Boleros themselves are illicit. It's not just the bribe to get a valid currency transfer. It's the allegations that are both in the complaint and embedded in the attachments. Well, part of... It seems to suggest that they themselves, this sort of black market dollar trading was itself illicit. And if that's the case, then how does that not implicate the active state? Well, for two reasons. One is, if that was, if every time we pled Trustee X Maleficio, and that was ran away from in the appellee's brief, they argued a waiver issue, we've cited to this court cases from this court allowing us to raise an argument that was properly, an issue that was properly raised, a new argument that was properly pled. And in those cases, when you have inequitable conduct, there's not a Trustee X Maleficio case that they've distinguished or they've brought before this court that's invalidated any transfer. It's an equitable remedy that says the transfer, we don't invalidate the transfer. We treat you as a constructive trustee because you gain these properties through inequitable  You know, but if the purpose of the remedy is because of the illicit nature of the underlying contracts, then aren't you, wouldn't the judgment essentially be a condemnation of the active state? I mean, isn't that the issue here? And different from the bribe itself, which is separate from the contract. Well, the court's allowed to condemn because, and we cited to the court Lamb v. Philip Morris and the Kirkpatrick v. Environmental Tectonics Corp. out of the Supreme Court in the Sixth Circuit saying that you can impute to the foreign officials this corrupt intent. And with Gorin, his role, it's not that the contract was, it needs to be invalidated, it's that he aided the breach of trust. There was a Venezuelan official who took bribes. They breached the trust of the Venezuelan people. He participated aiding and abetting by paying those bribes. If we establish that, then essentially the fruit of the poisonous tree, the property derived from this illicit currency exchange, which he got through a bribe of Venezuelan officials who were engaging in breaches of trust, which he aided and abetted, is then inequitable. And under the trustee ex-maleficio case law, the remedy is constructive trust. There has not been a case cited to this court. We have not found one. But they have not cited one that says when you satisfy the elements of trustee ex-maleficio, which the remedy is for constructive trust, that then you must separately invalidate the underlying transaction. For that to happen, then we blend law into equity and we go backwards. It's an equitable remedy. Thank you, Your Honor. We ask that the court reverse. Thank you. Thank you, counsel. We'll be in recess until 9 a.m.